UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JERZY WIRTH, ) | |
| ) | |
|     Cross-claim Plaintiff, ) | |
| ) | |
| v. ) | No. 2:12-cv-296-JHR |
| ) | |
| STEPHEN WADE, et al., ) | |
| ) | |
|     Cross-claim Defendants ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

The remaining parties in this interpleader action, Jerzy Wirth and Stephen Wade and his law firm, Skelton Taintor & Abbott, each claim the entire amount of $205,233.27 that has been deposited with the court. Trial was held before me on August 23, 2013, and the parties submitted proposed findings of fact and conclusions of law simultaneously on September 20, 2013. ECF Nos. 86 & 87. A joint stipulation of facts was filed on August 9, 2013, in advance of trial. ECF No. 78. I now make the following findings of fact and conclusions of law.

**I. Findings of Fact**

1. Stephen B. Wade, Esq., and the law firm of Skelton Taintor & Abbott represented Geoff Hasler and MyFreeMedicine.com, on a contingency fee basis, in a lawsuit seeking damages of up to $25,000,000.00, involving claims under civil RICO and breach of contract, filed in this court on October 23, 2008, and assigned the docket number 2:08-cv-362-JAW (the "MFM case"). Joint Stipulation of Facts ("Joint Stipulation") (ECF No. 78) ¶ 1.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all proceedings in this case, including trial, and to order the entry of judgment. ECF No. 64.

1

2. The written fee agreement between Geoff Hasler and Skelton Taintor & Abbott, which was signed on or around January 30, 2008, included the following language:

> Skelton, Taintor & Abbott will be entitled to part of proceeds of any settlement o[f] action to pay the lawyer's fees and expenses and has an attorney's lien to enforce this agreement.

Exhibit 64 ¶ 3.

3. Geoff Hasler sought funding in connection with this litigation and contracted with Airborn/Jerzy Wirth for such funding. Joint Stipulation ¶ 2.

4. Jerzy Wirth and Airborn LLC recorded in Maine, on January 16, 2013, a UCC-1 filing against the $205,233.27 deposited in this court in this interpleader action based on a promissory note and agreement dated August 28, 2009. *Id*. ¶ 3.

5. During the term of Stephen B. Wade's representation of Geoff Hasler, Jerzy Wirth advanced Geoff Hasler approximately $93,000.00. *Id*. ¶ 4.

6. With the permission of Geoff Hasler, Stephen B. Wade participated in a telephone conference for approximately 45 minutes with Jerzy Wirth and Mr. Wirth's associate, Joseph Funk, before Jerzy Wirth and Geoff Hasler entered into the funding agreement. *Id*. ¶ 6.

7. On or about August 13, 2010, in the MFM case, this court dismissed the RICO counts, leaving active only the breach of contract claim. *Id*. ¶ 7.

8. In January 2011, Stephen Wade determined that the Maine Rules of Professional Conduct required that he and his law firm withdraw from representing Geoff Hasler and MyFreeMedicine.com. Testimony of Stephen B. Wade. On January 25, 2011, Stephen B. Wade and Skelton Taintor & Abbott filed an *ex parte* motion to withdraw as counsel for Geoff Hasler and MyFreeMedicine.com in the MFM case, which was granted on January 26, 2011, following a telephone conference, Joint Stipulation ¶ 8, and over Geoff Hasler's objection. Testimony of

Stephen B. Wade. Jerzy Wirth did not ask Geoff Hasler to waive the attorney-client privilege to allow Wirth to discuss with Stephen Wade the reasons for his withdrawal. Testimony of Jerzy Wirth.

9. Geoff Hasler and Stephen Wade entered into an agreement, confirmed by letter dated January 14, 2011, that stated, in relevant part, that new prospective counsel Joseph Groff would agree to honor the attorney fee lien of Stephen Wade and his law firm, in an amount based on the fair value of the services that they had already provided. Exhibit 32.

10. Geoff Hasler and MyFreeMedicine.com then retained Joseph Groff, Esq., of Jensen Baird Gardner & Henry. Joint Stipulation ¶ 9.

11. Joseph Groff, Esq., began representing Geoff Hasler and MyFreeMedicine.com, on an hourly basis, in January of 2011, and entered an appearance in the MFM case on February 23, 2011. *Id*. ¶¶ 10-11. Joseph Groff signed an "Acknowledgment and Agreement" related to the funding agreement between Geoff Hasler and Jerzy Wirth which included Joseph Groff's agreement to "pay Airborn all due monies from any settlement or verdict of the above-referenced Case according to the terms of this same Agreement, subject to a lien by Stephen P. [sic] Wade, prior Attorney for this case representing Geoff H. Hasler and MyFreeMedicine.com LLC." Exhibit 12.

12. Over a period of approximately one year, Jerzy Wirth paid invoices issued by Joseph Groff and his law firm in the amount of approximately $157,000.00. Joint Stipulations ¶ 12.

13. Geoff Hasler and Jerzy Wirth maintained their funding agreement through amendments. *Id*. The promissory note between Jerzy Wirth and Geoff Hasler provided that the loan would be repaid "after first paying a previously agreed upon 35% (Thirty Five per cent) of said settlement

to Plaintiff's Attorney, together with any other contracted miscellaneous fees to the Attorney(s)[.]" Exhibit 1 at 1.

14. An amendment to the funding agreement dated November 13, 2010, states, in relevant part: "[I]f the Plaintiffs pay their attorney, currently Steve Wade and his Law Firm, the existing 35% commission" certain other steps will take place. Exhibit 10.

15. In December 2011, the MFM case was settled for $430,000.00. Joint Stipulation ¶ 13. The stipulation of dismissal was filed on January 17, 2012. *Id*. Settlement negotiations in the MFM case were going on during the time Stephen Wade moved to withdraw. Testimony of Jerzy Wirth.

16. Attorney Groff escrowed $205,233.27 of the settlement, based on the claim of Stephen Wade and his law firm for attorney fees. Joint Stipulation ¶ 14. At the time of Joseph Groff's entry into the MFM case, he and Stephen Wade discussed the possibility that the value of the services that Stephen Wade had provided would diminish the longer the case remained unresolved. Testimony of Joseph Groff.

17. In February 2012, Jerzy Wirth authorized Jensen Baird Gardner & Henry to release $180,000.00 from the settlement monies to Geoff Hasler, who represented that he would use the money to purchase certain stock options. Testimony of Jerzy Wirth; Exhibit 28. Geoff Hasler signed a promissory note in favor of Jerzy Wirth for $180.000.00. Exhibits 27 & 28.

18. In the spring of 2012, Geoff Hasler and MyFreeMedicine.com demanded fee arbitration with the Fee Arbitration Commission of the Maine Board of Bar Overseers. Exhibit 35. The matter was heard on July 19, 2012, in Augusta, Maine. *Id*.

19. On August 15, 2012, the panel of the Fee Arbitration Commission that had held the hearing issued an award in favor of Stephen Wade against Geoff Hasler in the amount of $205,233.27.

Joint Stipulation ¶ 15.  The Maine Superior Court (Kennebec County), upon petition by Skelton Taintor & Abbott, entered a judgment in favor of Stephen Wade against Geoff Hasler in the amount of $205, 233.27, on December 26, 2012.  *Id.*

20.  The Maine Superior Court also entered an order of attachment and attachment on trustee process on September 10, 2012, in the amount of the award, and trustee process was served on Jensen Baird Gardner & Henry on September 12, 2012.  Exhibits 36 & 38.

21.  Pursuant to a written agreement dated September 18, 2012, Jensen Baird Gardner & Henry released to Jerzy Wirth and Airborn all of the remaining settlement proceeds, $54,890.73.  Testimony of Jerzy Wirth and Joseph Groff; Exhibit 31.

22.  Skelton Taintor & Abbott filed a UCC financing statement in connection with the state-court judgment on June 4, 2013.  Joint Stipulation ¶ 16.

23.  On November 9, 2012, the Superior Court of the State of Delaware in and for New Castle County entered judgment in favor of Jerzy Wirth against Geoff Hasler in the amount of $428,750.00.  *Id* ¶ 18.  This judgment was recorded in Maine on January 14, 2013.  *Id*. ¶ 19.

24.  On September 12, 2012, Geoff Hasler executed a release disclaiming and waiving any rights to the $205,233.27 from the MFM settlement then in escrow.  *Id*. ¶ 20.

25.  Jerzy Wirth also provided Geoff Hasler with money for his personal expenses during the MFM litigation.  Testimony of Jerzy Wirth.  He advanced a total of approximately $301,676.00 to Geoff Hasler.  Joint Stipulation ¶ 21.

26.  Jensen Baird Gardner & Henry, by complaint for interpleader, initiated the current litigation.  *Id*. ¶ 22.  The $205,233.27 has been deposited with the court.  *Id.*

## II. Conclusions of Law

### A. Standing

The cross-claim defendants first contend that Wirth lacks standing to make a claim on the interpleader funds because he cannot attack the contract between Hasler and the defendants, to which he was not a party. Skelton, Taintor & Abbott's Proposed Findings of Fact and Conclusions of Law ("Defendants' Brief") (ECF No. 86) at 13-14. I do not understand Wirth to be suing for breach of the contract between the defendants and Hasler. It is true that he asserts repeatedly that Wade "abandoned" that contract, but he does not contend in his post-trial brief that the act of "abandoning" is a breach for which he, a non-party to the contract, can recover.

*Devine v. Roche Biomedical Labs.,* 659 A.2d 868 (Me. 1995), the only case cited by the defendants in this regard, does not require or even support a finding that Wirth lacks standing in this case. That case merely addresses the viability of a third-party-beneficiary claim, which Wirth has not made here. It is not necessary that Wirth establish a breach of the contract between Hasler and the defendants in order to recover the deposited funds. He has standing to pursue those funds.

### B. Waiver

The defendants next argue that Wirth waived any claim to the remaining monies in the escrow that is now in the possession of the court when he entered into the agreement allowing Hasler access to $180,000.00 of the settlement monies and by signing a release in return for the payment to him by Jensen Baird Gardner & Henry of $54,890.73 from the settlement funds. Defendants' Brief at 14-16.

Taking the latter argument first, Wirth's release to Jensen Baird Gardner & Henry admittedly does not contain any reference to Wirth's rights in any funds remaining in the escrow

after the release of the $54,890.73 from those funds to Wirth, but it also by its express terms releases only Jensen Baird Gardner & Henry from

> any and all actions, claims, causes of action, suits, contracts, liabilities, administrative complaints, covenants, agreements and damages whatsoever now existing or which may result from the existing state of things which Wirth has or ever had against Jensen Baird, its attorneys, officers, employees, directors, agents, representatives, principals, successors and assigns.

Exhibit 31 ¶ 3. Contrary to the defendants' assertion, Defendants' Brief at 16, there is nothing in this release or Wirth's acceptance of the $54,890.73 that is necessarily inconsistent with his claim against the fund itself for further sums.

I reject the defendants' contention that the rejection by the Maine Superior Court of Wirth's effort to intervene in the action that transformed their arbitration award into a court judgment bars him, under principles of *res judicata*, from seeking to recover any money from the escrowed settlement funds. That judgment did not purport to address the settlement funds, nor could it. *See* Exhibits 37 & 38.

The agreed release to Hasler of $180,000.00 from the fund is another matter, however. Wirth accepted a promissory note from Hasler in that amount. Exhibit 27. He also entered into a "Confidential Agreement" with Hasler specifying the uses to which the $180,000.00 would be put, including an unrestricted release to Hasler of $55,000.00 and investment of $125,000.00 in Groupon stock options. Exhibit 28 at 1. Any "additional settlement monies" were to be paid to Wirth in conformance with the existing "civil litigation funding agreement" between Hasler and Wirth, and the proceeds of the investment were to be distributed pursuant to the funding agreement, and, once those terms were satisfied, equally between Hasler and Wirth. *Id*. Wirth also signed Hasler's direction to Jensen Baird Gardner & Henry to release $180,000.00 from the

7

settlement proceeds to Hasler.  Exhibit 29.  Neither Wade nor his law firm was a party to these agreements.

Under these circumstances, Wirth cannot continue to claim entitlement to the full amount of his judgment against Hasler.  He has received $54,890.73 outright and agreed to the release of an additional $180,000.00 to which he might have otherwise been entitled, in the apparent hope of obtaining more than $180,000.00 from Hasler's proposed investment.

However, contrary to the defendants' argument, made without citation to authority, Defendants' Brief at 15-16, the fact that Wirth agreed to the release of $180,000.00 from the settlement fund does not necessarily mean that he waived any claim to the monies thereafter remaining in the fund.  Nothing in the release documents may reasonably be read to effect such a waiver.  Nor does Wirth's conduct suggest such a waiver.

Accordingly, Wirth's claim must be reduced either to $66,785.27 ($301,676.00 funding of MFM case (Joint Stipulation ¶ 21) minus $180,000.00 minus $54,890.73) or $193,859.27 ($428,750.00 Delaware court judgment (Joint Stipulation ¶ 18) minus $180,000.00 minus $54,890.73).

### C. Equity

Wirth bases his argument on the assertion that an interpleader action is an action in equity.  Defendant Jerzy Wirth's Post Trial Brief ("Plaintiff's Brief") (ECF No. 87) at [3]-[10].  He states that he seeks all of the interpleaded funds[2] on two bases: (1) his litigation funding contract with Hasler takes precedence over the defendants' contingent fee contract with Hasler "because of the unilateral withdrawal[] and . . . abandonment of the contingency contract," *id*. at

---

[2] I have already decided, for the reasons stated above, that Wirth is entitled, at most, to no more than $193,859.27 of the interpleaded $205,233.27.  I discuss Wirth's claims for separate, additional damages later in this opinion.

8

6, and (2) his Delaware court judgment against Hasler "precedes Wade's judgment against Hasler, both in the date of court execution[] and in the date of recording." *Id*. at [6].

This court has jurisdiction over this interpleader action because the adverse claimants to the deposited funds are citizens of different states.  28 U.S.C. § 1335.  The relief available is equitable in nature, *see, e.g., A & E Television Networks, LLC v. Pivot Point Entertainment, LLC*, 771 F.Supp.2d 296, 303 (S.D.N.Y. 2011), but that does not mean, as Wirth would have it, that, accordingly, he is entitled to all of the deposited funds.  For example, as I have described above, it would be inequitable for Wirth to recover for a second time the $54,890.73 that he has already been paid from the settlement proceeds, and the same is true of the $180,000.00 released to Hasler with Wirth's consent and receipt of a promissory note for the full amount from Hasler.

Both of Wirth's substantive arguments fail.  Beginning with the second argument, Wirth contends, without citation to authority, that he is entitled to the interpleaded monies because he obtained a court judgment against Hasler before the defendants did so, and because he made a UCC filing of his judgment before the defendants did so with their judgment.  Plaintiff's Brief at [6].  The defendants obtained a decision from the Fee Arbitration Commission of the Maine Board of Bar Overseers on August 15, 2012.  Joint Stipulation ¶ 15.  On November 9, 2012, the Superior Court of Delaware entered judgment in favor of Wirth against Hasler in the amount of $428,750.00.  *Id*. ¶ 18.  This judgment was recorded in Maine on January 14, 2013.  *Id*. ¶ 19.  The Maine Superior Court entered judgment on the defendant's arbitration award on December 26, 2012.  *Id*. ¶ 15.  The associated UCC statement was filed on June 4, 2013.  *Id*. ¶ 16.

While Hasler's judgment and UCC filings preceded those of the defendants, under Maine law an arbitrator's determination of damages, even when not yet judicially confirmed, has the effect of collateral estoppel.  *Beal v. Allstate Ins. Co.,* 2010 ME 20,  ¶ 14, 989 A.2d 733, 738-39.

9

That is, the arbitration award has the same status under the rules of *res judicata* as a court judgment. *Id*. Thus, to the extent that Wirth's "first in time" argument correctly states the law applicable to this interpleader action, the defendants were in fact first under Maine law.

Wirth's first substantive argument, that the funding contract takes precedence over the contingent fee agreement, misapprehends the circumstances surrounding a lawyer's withdrawal from representing a client, when that withdrawal is approved by a court under the Maine Bar Rules. Wade and his law firm were granted leave to withdraw from the MFM case by Chief Judge Woodcock of this court. Joint Stipulation ¶ 8. Such a withdrawal is not "unilateral," Plaintiff's Brief at [3]; the lawyer could not withdraw without court approval.

Wirth also suggests that Wade withdrew because "he did not wish to undertake litigation which might be unsuccessful." *Id*. The only evidence to support this assertion is Wirth's testimony that Hasler told him so. Wade's own testimony is clearly to the contrary, and I find it more credible than Wirth's proffer of what was told to him by Hasler about what Wade allegedly said to Hasler, who Wirth himself characterized as a "con man." For this reason, the only authority cited by Wirth on this point, *Hardison v. Weinshel*, 450 F. Supp. 721 (E.D. Wisc. 1978), is readily distinguishable. In that case, the judge had rejected the first request to withdraw filed by the plaintiff's attorney, granted his second request about two months before the case was scheduled to go to trial, and found after the case settled that the attorney "did not wish to undertake litigation which might be unsuccessful," based on a letter the attorney had written to the plaintiff. *Id*. at 722. He also found that the settlement resulted solely from the efforts of the plaintiff's second lawyer. *Id*. at 723. Neither such finding has been made in this case, and the available evidence would not justify either such finding.

Wirth faults Wade for failing to appeal the dismissal of the RICO counts in the MFM case "[f]or approximately a five month period after the dismissal of RICO until he withdrew[.]" Plaintiff's Brief at [4]. Because a breach of contract count remained active in the MFM case after the dismissal of the RICO counts, it is unlikely that any attempt to pursue an interlocutory appeal of the dismissal would be accepted by the First Circuit Court of Appeals. *See, e.g., United States Fidelity & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 54-55 (1st Cir. 2009) (appeal generally possible only when judgment or decision terminates litigation between parties; interlocutory appeal available only when an order involves controlling question of law as to which there is substantial ground for difference of opinion and immediate appeal may materially advance ultimate termination of litigation). Failing to file an appeal of the interlocutory dismissal of some of the counts in the MFM complaint was not an error on the part of Wade or his firm.

Wirth argues at some length that Wade "contributed very little of merit to the MFM case," Plaintiff's Brief at [3]-[5], but that argument is foreclosed by the finding of the Fee Arbitration Commission, after hearing, that the services of Wade and his firm to Hasler with respect to the MFM litigation were in fact worth $205,233.27. Joint Stipulation ¶ 15. This fact also forecloses Wirth's contention that "Wade seeks to unjustly enrich himself." Plaintiff's Brief at [7]. Wirth bemoans the facts that Wade "did not initially inform [the] Superior Court of Wirth's interest," *id.*, presumably in the action in which Wade and his law firm sought a judgment based on the decision of the Fee Arbitration Commission, but Wirth had no standing to be involved in that action.[3] Funding the MFM litigation gave Wirth no involvement in Hasler's

---

[3] Wirth asserts that the defendants filed "[p]leadings stating that Skelton, Taintor, & Abbott [had] no knowledge of Wirth's claim," Plaintiff's Brief at [8], but the very language that he quotes as evidence of this "deceit" does not so state. Rather, they state that there was no information "from which Skelton, Taintor, & Abbott or the court can

11

relationship with Wade and his law firm. Contrary to Wirth's suggestion, *id*. at [7], there is no evidence that any of his initial "incremental" payment to Hasler of $93,000 went to Wade or his law firm, and, thus, there could be no requirement that Wade inform the Superior Court that Wirth had made payments to Hasler, which Wirth understood to be litigation funding.

The important fact remains that Hasler and Wade entered into an agreement, confirmed on January 14, 2011, that provided, *inter alia*, that Groff would honor a lien of Wade's law firm for attorney fees on any proceeds of a judgment or settlement. Exhibit 32. Wirth cites the following statement in this agreement as evidence of inequitable action by Wade barring him from collecting the attorney fee award: "In consideration for and in reliance upon this protection agreement, we will not institute any lawsuit to establish our claim." *Id*. Wirth characterizes this statement, and Wade's testimony that he would have sued Hasler "in the middle of the MFM case" for the value of his services had Hasler not entered into this agreement, as "inequitable action[s]." Plaintiff's Brief at [7], [8].

Contrary to Wirth's assertions, the existence of this agreement does not prove that Wade "threatened" to sue Hasler, nor does it demonstrate that "Wade's actions placed Hasler under duress" that forced him to sign the agreement. *Id*. at [8]-[9]. The timing of the agreement likely was driven more by the granting of Wade's motion for leave to withdraw than it was by the fact that the MFM litigation had not yet concluded. Wade's testimony in response to Wirth's question does not establish that Wade conveyed any threat to Hasler.[4]

---

make an assessment as to Mr. Wirth's claim of ownership, if any." *Id*. at [7]. There is a significant difference between knowledge of a claim and having sufficient evidence to evaluate that claim.

[4] Wade testified that he discussed arbitration and possible litigation based on his claim for fees for services rendered with Hasler and told Hasler that Wade expected to be paid for the work that he had done. He testified that he told Hasler that, if he and Wade did not come to an agreement and if Hasler did not seek fee arbitration, Wade would file suit seeking to recover those fees because waiting until the MFM case ended to resolve the claim would have harmed Wade. He knew that he had very little prospect of getting those fees directly from Hasler.

Wirth has not established any inequitable or unethical conduct by the defendants with respect to their claim against the interpleader funds.

### D. Other Claims

Wirth asserts that the defendants should be held liable to him for the damages that their inequitable or unethical actions have caused him. Plaintiff's Brief at [6]. Having concluded that Wirth has not established that the defendants acted inequitably or unethically toward him, I reject his demands for damages based on those claims.[5]

The cross-claim filed by Wirth alleges, in three counts, breach of the contingency fee agreement between Hasler and the defendants[6] and of the funding contract among Hasler, the defendants, and Wirth; interference with the funding contract; and intentional and negligent misrepresentation. Answer to Complaint for Interpleader (ECF No. 16) at [7]-[9] ¶¶ 25-27. To the extent that Wirth intends his post-trial brief to include these claims, I have concluded, for the reasons stated above, that the defendants are entitled to judgment on each claim. If he did not mean to include one or more of these claims in his post-trial brief, then his failure to submit any argument directed to a specific claim constitutes a waiver of that claim. *E.g., Bowman v. Colvin*, No. 1:12-CV-246-GZS, 2013 WL 1907454, at *6 (D. Me. Mar. 31, 2013).

---

[5] Wirth's assertion that the defendants are "seeking profit" in this action, Plaintiff's Brief at [9], is incorrect. The award of the Fee Arbitration Commission is for the value of the services provided by the defendants, which does not constitute profit.

[6] I note that Wirth is not a party to the contingent fee agreement between Hasler and the defendants and has not submitted any evidence that could support a claim that he is a third-party beneficiary of that contract. *See, e.g., DiMillo v. Travelers Property Caas. Co. of Am.*, 789 F.Supp.2d 194, 207-08 (D. Me. 2011). Under these circumstances, Wirth cannot recover for a breach of that contract.

### III. Conclusion

For the foregoing reasons, judgment shall enter in favor of the defendants, awarding them the full deposited amount. Judgment for the defendants shall also enter on the plaintiff's cross-claim.

Dated this 28th day of October, 2013.

                                                /s/ John H. Rich III  
                                                John H. Rich III  
                                                United States Magistrate Judge